# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

LARRY L. PRICE,

    *Plaintiff*,

v.

COMMISSIONER OF
SOCIAL SECURITY,

    *Defendant*.
_____/

CASE NO. 09-CV-10130

DISTRICT JUDGE AVERN COHN
MAGISTRATE JUDGE CHARLES E. BINDER

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

## II.     REPORT

### A.      Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for supplemental security income benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 12, 15.)

Plaintiff was 50 years of age at the time of the most recent administrative hearing, which was held on September 19, 2005. (Transcript, Doc. 7 at 14, 42.) Plaintiff's relevant employment history includes work in the auto industry on an assembly line. (Tr. at 47.) According to Plaintiff's application, he last worked in 1990. (*Id.*)

Plaintiff protectively filed the instant claim on October 8, 2003, alleging that he became unable to work on December 31, 2000. (Tr. at 42.) The Appeals Council remanded the case to the ALJ and the ALJ's decision on remand is the subject of this case. (Tr. at 133-36.) The basis for the remand will be discussed in detail in the substantial evidence analysis portion of this Report and Recommendation. The claim was denied at the initial administrative stages. (Tr. at 32.) In denying Plaintiff's claims, the Defendant Commissioner considered schizophrenia, paranoid & other psychotic disorders, and other and unspecified arthropathies as possible bases of disability. (*Id.*)

On September 19, 2005, Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Michael F. Wilenkin, who considered the application for benefits *de novo*. (Tr. at 14-23, 148.) The ALJ's initial decision, dated November 16, 2005 (Tr. at 121-30), was remanded to the ALJ to resolve three issues:

> The decision does not accurately address the medical opinion expressed by the claimant's treating psychologist, Dr. Robert Cornette, on November 26, 2003 (Exhibit 8F) as to the claimant's ability to perform work related functions, nor did it indicate the weight given to such opinion evidence . . . . In accordance with 20 C.F.R. 416.912(e) and 416.927, Dr. Cornette should be re-contacted for further clarification of his opinion and/or to obtain additional medical records regarding the claimant's mental status.
>
> The residual functional capacity finding (No. 5) indicates that the claimant is able to perform semi-skilled medium work where social interaction is moderately limited. Although the Administrative Law Judge found that the claimant had severe mental impairments, he did not adequately determine the claimant's mental residual functional capacity . . . . [T]he claimant has only 'severe' mental impairments that do not appear to impair his strength activities. The decision does not provide any rationale for the medium residual functional capacity.
>
> The Administrative Law Judge found that the claimant retains the residual functional capacity to perform his past relevant work as a short order cook. The claimant reported . . . that he performed this job from January 2002 to August 2002. However, the claimant's earnings record (Exhibit 1 D) reveals no earnings reported for 2002. Accordingly, it appears that the claimant's past work of short order cook cannot serve as a basis for denial . . . .

(Tr. at 134.) The Appeals Council further stated that,

> [a]s appropriate, the Administrative Law Judge will obtain updated medical records from the claimant's treating and other medical sources . . . . If the evidence does not adequately clarify the record, the Administrative Law Judge will recontact the medical source(s) for further information.
>
> If the additional evidence does not clearly depict the claimant's limitations, the Administrative Law Judge will obtain a consultative mental status examination....
> . . . .
>
> If warranted, the Administrative Law Judge will obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base.

(Tr. at 134-35 (citations omitted).)

After remand, in a decision dated January 8, 2008, the ALJ found that Plaintiff was not disabled at any time through the date of his decision, because he was able to perform a significant

3

range of work at all exertional levels. (Tr. at 19, 23.) Plaintiff requested a review of this decision on March 4, 2008. (Tr. at 8.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on November 7, 2008, when, after the review of additional exhibits[2] (Tr. at 121-47), the Appeals Council denied Plaintiff's request for review. (Tr. at 5-7.) On January 12, 2009, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (*See* Compl., Doc. 1; Am. Compl., Doc. 4.)

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the

---

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

4

Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

*See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

6

or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920.  *See also Heston,* 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540).  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the

national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

**D.     Administrative Record**

A review of the relevant medical evidence contained in the administrative record and presented to the ALJ after remand indicates that in 1996, upon referral from the Oakland County Circuit Court, Plaintiff was diagnosed with major depression, recurrent and severe.  Plaintiff also had a history of bilateral carpal tunnel syndrome and psychological stressors.  (Tr. at 87-92, 171.)[3]

Plaintiff's limited work history as a short order cook apparently resulted from completing a culinary arts program through the State of Michigan while incarcerated in 2002 for receiving and concealing stolen goods.  (Tr. at 165.)

Plaintiff next sought treatment with Community Network Services in July and August of 2005 for mental health services and was prescribed Wellbutrin for depression.  (Tr. at 110-20, 143-47.)  Plaintiff's substance abuse history was also noted.  (*Id.*)

A Psychiatric Review Technique conducted in September 2003 stated that there was insufficient evidence of any mental or emotional disorder subsequent to 1996.  (Tr. at 60, 72.)  A mental Residual Functional Capacity ("RFC") assessment conducted in November 2003 concluded that Plaintiff's abilities to follow work rules and interact with supervisors were poor, that his abilities to relate to coworkers and deal with the public were fair, and that his ability to use judgment was between fair and poor.  (Tr. at 93.)

---

[3] In 1981, Plaintiff was "provision[ally] diagnosed" with mental illness and "possible" anxiety-induced psychosis. (Tr. at 81.)

Plaintiff indicated in his information sheet that he cares for his own personal needs, washes his clothes, and enjoys sports, music, television, and going to church. (Tr. at 59.) He also stated that he can stand for one-half hour and can sit for 5 hours, that he can walk for one-half mile and can lift 45 pounds. (*Id.*)

At the administrative hearing when the ALJ asked Plaintiff about his symptoms, Plaintiff testified that they occur when he is "working around crowds . . . you know, [I] feel like somebody's talking about me, you know, hearing voices and stuff." (Tr. at 156.) Plaintiff also stated that he does sometimes feel like people are trying to control him. (*Id.*) He further explained that the voice he hears is a single voice of the male gender, and that he hears the voice just before falling asleep "every other night or something like that" but does not hear voices when watching television. (Tr. at 157.) When asked by the ALJ whether he is sure that it is someone else's voice that he hears rather than his own talking to himself, Plaintiff responded, "No, I'm not, I'm not sure – I'm pretty sure it's not me talking to myself." (Tr. at 158.) Plaintiff further testified that he has seen a psychiatrist for this problem for "like 30 days now" before the hearing. (*Id.*) Plaintiff indicated that his psychiatrist prescribed Wellbutrin for this problem and that he has not had much trouble with voices since taking the medicine and that the medicine also keeps him calmer. (Tr. at 159.) Plaintiff was prescribed Risperdal before Wellbutrin. (Tr. at 168.) He also testified that he had been attending "AA meetings 5 times a day" and that he had not used controlled substances or alcohol "since I've been going to therapy and out of jail" around May 2004. (Tr. at 159-60.) When he was using controlled substances, he used cocaine and marijuana. (Tr. at 161.)

When the ALJ asked Plaintiff why he can't work at all, Plaintiff stated, "I just, my nerves around, working around people, it just agitates me, you know, and like it's hard for me to get along with people." (Tr. at 164.) When pressed further as to why or in what way Plaintiff becomes

9

agitated, Plaintiff responded, "I can't hardly stand to be told what to do or how to do different things, you know, if I'm working on a certain job and stuff and it really just agitates me so I feel like I know what I'm supposed to be doing and nobody ain't got to tell me to do nothing." (Tr. at 164.)

The Vocational Expert ("VE") was asked to consider a person with Plaintiff's background and assume "that his descriptions of limitations is accurate." (Tr. at 169.) The VE testified that Plaintiff would be able to perform jobs such as gatehouse guard, night watchman, and various inspector jobs that are "not going to require a lot of interrelationship with co-workers, supervisors, or the general public" and that such jobs exist in significant numbers, i.e., 7,500 were available in the southeastern area of the state and around 15,000 in the entire state. (Tr. at 170.) When asked by Plaintiff's lawyer whether a person incapable of following instructions or being supervised would be employable, the VE stated that "[t]he simplest of jobs require some ability to follow instructions, whether written or verbal. If one is incapable of doing that, then [he would] probably be precluded from the national [inaudible]." (Tr. at 170-71.)

### E. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since September 15, 2003, the application date. (Tr. at 16.) At step two, the ALJ found that Plaintiff's schizophrenia and/or major depressive disorder and history of polysubstance abuse were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 18.) At step four, the ALJ found that Plaintiff has no past relevant work. (Tr. at 21.) At step five, the ALJ found that Plaintiff was an individual approaching advanced age on the date the

application was filed and that he is able to perform a full range of work at all exertional levels. (Tr. at 19-22.) Thus, the ALJ found that Plaintiff was not disabled. (Tr. at 22.)

### F. Analysis and Conclusions

#### 1. Legal Standards

As mentioned, the ALJ determined that Plaintiff possessed the residual functional capacity to undertake a full range of work at all exertional levels. (Tr. at 19.) After review of the record, I first suggest that the ALJ utilized the proper legal standard in the application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

#### 2. Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff specifically contends that the ALJ did not comply with the Order of Remand from the Appeals Council "because he failed to have the Plaintiff undergo a mental status evaluation," instead "he relied solely on the testimony of the Plaintiff and two exhibits (Doc. 12 at 5, Ex. 5 and 6; Tr. at 59 (Claimant's Information Sheet), 143 (Community Network Services, Inc., Psychiatric Evaluation.)) Plaintiff further argues that the decision is not supported by substantial evidence because "without benefit of a consultative/psychiatric/psychological evaluation, [the ALJ]

11

conducted his own assessment of the severity of the Plaintiff's mental impairments." (Doc. 12 at 7.)

Defendant counters that "Plaintiff has misread the ALJ's decision." (Doc. 15 at 12.) "[E]ven though the ALJ never obtained a consultative mental status examination, he nevertheless complied with the March 8, 2006, remand order . . . [wherein] the Appeals Council instructed that as appropriate, the ALJ will obtain updated medical records . . . [and] '[i]f the additional evidence' did not clearly depict Plaintiff's limitations, the ALJ will then obtain a consultative mental status examination." (Doc. 15 at 13.)

I suggest that Plaintiff's reading of the Appeals Council's decision is not supported by the decision itself or the internal references to applicable regulations. The Appeals Council stated that, "[i]n accordance with 20 CFR 416.912(e) and 416.927, Dr. Cornette should be re-contacted for further clarification of his opinion and/or to obtain additional medical records regarding the claimant's mental status." (Tr. at 134.) The regulation applies to "[r]econtacting medical sources" and states that, "[w]hen the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or decision." 20 C.F.R. § 416.912(e). It then indicates the procedure used to obtain the additional information. *Id.* The Appeals Council's decision suggests re-contact in accordance with 20 C.F.R. § 416.912(e) and the regulation only requires the ALJ to seek additional information when the evidence is otherwise inadequate. Since the ALJ did not find the information inadequate, the ALJ was under no obligation to seek additional information.[4] *See DeBoard v. Comm'r of Social Security*, 211 Fed. App'x 411, 416 (6th

---

[4] I note that 20 C.F.R. § 416.927 regards evaluating opinion evidence and is not directly pertinent to the instant case since the ALJ did not discount any medical opinion evidence.

Cir. 2006); *Jackson v. Barnhart*, 368 F. Supp. 2d 504, 507, n.1 (D.S.C. 2005); *Phelps v. Astrue*, No. 08-123-GFVT, 2009 WL 2778212, at *2 (E.D. Ky., Sept. 1, 2009).

In addition, even if the Appeals Council had referred to the regulation regarding consultative examinations, the ALJ was not required to order a consultative or psychological examination as argued by Plaintiff. Section 416.912(f) applies to the "[n]eed for consultative examination" and it provides that "[i]f the information we need is not readily available from the records of your medical treatment source, or we are unable to seek clarification from your medical source, we will ask you to attend one or more consultative examinations at our expense." 20 C.F.R. § 416.912(f). Since the ALJ did not find a need for information or clarification, it was properly within his discretion to decline to request one.

I therefore suggest that Plaintiff's assertions of ALJ error are not persuasive. I further find that substantial evidence supports the ALJ's finding that Plaintiff is not disabled. Although Plaintiff contends he has disabling mental health issues, any treatment for those issues has been very infrequent (once pursuant to court order) and even when sought, the treatment has been limited to prescription drug treatment which Plaintiff testified was effective to manage his symptoms. (Tr. at 110-20, 143-47, 158-59, 168.) Plaintiff's testimony indicated that even when his symptoms have not been controlled, he only hears the voice, which he was not sure was simply his own voice, just before falling asleep; thus, this symptom would not interfere with work. (Tr. at 157-58.) Plaintiff does not have a history of hospitalization or other treatment indicative of severe mental illness. Plaintiff's agitation at being "told what to do or how to do different things" does not equal a severe mental impairment. (Tr. at 164.)

Finally, I suggest that the ALJ's findings accurately portrayed Plaintiff's individual limitations in his abilities to follow work rules, interact with supervisors, relate to coworkers and

deal with the public as noted in the RFC assessment. (Tr. at 93.) I further suggest that the hypothetical was in harmony with the objective record medical evidence as well as the daily activities described by Plaintiff himself that he is he is able to care for his own personal needs, wash his clothes, enjoy sports, music, and television, attend church, and attend AA meetings five times a day. (Tr. at 59, 162-64.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Accordingly, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III.   REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve

all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.

               s/ Charles E Binder
               CHARLES E. BINDER
Dated: December 16, 2009       United States Magistrate Judge

## CERTIFICATION

  I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:December 16, 2009        By  s/Patricia T. Morris
                 Law Clerk to Magistrate Judge Binder